UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY FREEMON,
#888929,

    Petitioner,                                     Civil Action No. 19-CV-11657

vs.                                                 HON. BERNARD A. FRIEDMAN

SHERRY L. BURT,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner, an inmate at the Muskegon Correctional Facility in Muskegon, Michigan,[1] has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his conviction for assault with intent to commit murder ("AWIM"), MICH. COMP. LAWS § 750.83; assault with a dangerous weapon ("felonious assault"), MICH. COMP. LAWS § 750.82; domestic violence third offense, MICH. COMP. LAWS § 750.81(5); felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony ("felony firearm"), MICH. COMP. LAWS § 750.227b, following a jury trial in Washtenaw County Circuit Court. In 2016, petitioner was sentenced, as a third habitual offender, MICH. COMP. LAWS § 769.11, to 45 to 80 years imprisonment on the AWIM conviction, a concurrent term of 2 years and 8 months to 4 years imprisonment on the felonious assault conviction, concurrent terms of 3 years and 4 months to 5 years imprisonment on the domestic violence and felon in possession

---

[1] Although the Muskegon Correctional Facility is located within the Western District of Michigan, the state court that convicted and sentenced petitioner is located within the Eastern District of Michigan. Therefore, pursuant to 28 U.S.C. § 2241(d), both districts "have concurrent jurisdiction to entertain [petitioner's] application" for a writ of habeas corpus.

convictions, and a consecutive term of 2 years imprisonment on the felony firearm conviction. For the following reasons, the Court shall deny the petition. The Court shall also deny petitioner a certificate of appealability and leave to proceed on appeal in forma pauperis.

### I.     *Background*

Petitioner's convictions arise from the non-fatal shooting of Vanessa Robuste at her home in Washtenaw County, Michigan in 2015. The Michigan Court of Appeals described the relevant facts as follows:

> A few days before the shooting, Freemon left the home he shared with Robuste and their children after an argument about Robuste's alleged infidelity. Because they had broken up, Robuste asked her landlord to change the locks, and Clarence Newman, a maintenance man, came to her home to do so. Robuste was the only person at the home when Newman arrived. According to Newman, while he was changing one of the locks, he heard something behind him and turned around to see Freemon approaching him with a large silver gun in his hand. Freemon threatened Newman with the gun before going inside in search of Robuste.
>
> Freemon found Robuste in her bedroom, pulled out the silver gun with his right hand, pointed it at her, put it in her mouth, and threatened her with it before forcing her into the kitchen. Newman testified that Robuste attempted to leave, but Freemon physically restrained her. Newman fled the home while Freemon was distracted, and Robuste testified that Freemon shoved her into a kitchen chair and "just started shooting." Robuste was shot in the leg, chest, and face.
>
> Freemon testified on his own behalf at trial. He stated that he would have been incapable of pulling the trigger due to an existing injury to his right index finger. He testified he was at Robuste's house on the day of the shooting to check on her because he believed her house had been broken into. He testified that when he attempted to show Robuste surveillance video footage on his cellphone, Robust smacked the gun and cellphone from his hand and the gun discharged accidently. Freemon claimed that he closed his eyes in reaction to the gun going off, felt something on his hands, let go of the gun, and heard two more gunshots. According to Freemon, when he opened his eyes, he saw Robuste lying in blood, and he ran outside to get help.

*People v. Freemon*, No. 332919, 2017 WL 3495377, at *1 (Mich. Ct. App. Aug. 15, 2017).

Following his convictions and sentencing, petitioner filed an appeal of right with the Michigan Court of Appeals raising the following claims through counsel and pro se:

    I.      He was denied the effective assistance of counsel.

    II.     He was denied due process when his jury was not properly instructed.

    III.    His convictions and sentences should be vacated because the prosecution violated his constitutional right to a speedy trial.

    IV.    His convictions must be reversed because the evidence was legally insufficient to prove beyond a reasonable doubt that he committed assault with intent to commit murder. His convictions are also contrary to the great weight of the evidence presented. In the alternative, he was denied the right to the effective assistance of counsel by trial counsel's failure to move for a directed verdict.

    V.     His defense counsel was ineffective and he was prejudiced when trial counsel failed to consult with and introduce an expert to testify that based on the trajectory of the gunshots the gun could not have been fired by him.

*See id.* at *1-7. The Michigan Court of Appeals denied relief on those claims and affirmed his convictions and sentences. *See id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard form order. *People v. Freemon*, 907 N.W.2d 567 (Mich. 2018).

In the instant application, petitioner raises four claims for relief. The claims are substantively identical to those presented to the state courts on direct appeal, but the allegations contained in Claim V are now included in Claim I. (ECF No. 1, PageID.5-23). Respondent has filed a response brief opposing each claim contained in the application (ECF No. 6) and petitioner has filed a reply. (ECF No. 8).

3

*II.* *Legal Standard*

> As the Supreme Court has stated:
>
> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter "adjudicated on the merits in State court" to show that the relevant state-court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting § 2254(d)). A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). In addition, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The

4

federal habeas court's review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Ineffective Assistance of Trial Counsel (Claim I and a Portion of Claim IV)

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to: (1) investigate his case with respect to a right hand injury, (2) adequately hear all of the testimony offered at trial, (3) move for a directed verdict on the AWIM charge, and (4) obtain a bullet trajectory specialist as an expert witness. (ECF No. 1, PageID.6-11, 19). Petitioner also alleges that counsel made certain impermissible statements that eroded his defense.

A habeas court's review of a lawyer's performance is "doubly deferential." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014). The first layer of deference is the deficient-performance-plus-prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under *Strickland*, petitioner must show that (1) counsel's "performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687. Constitutionally deficient performance may be found if "counsel committed an error so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687, internal quotation marks omitted). A strong presumption of effectiveness applies. *See Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000).

Under AEDPA, the second layer of deference asks "whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226. To prevail on an ineffective assistance claim, a habeas petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

5

Petitioner first asserts that counsel was ineffective for failing to adequately investigate and present evidence regarding petitioner's injured right hand, which, he argues, could have provided a defense at trial. The Michigan Court of Appeals denied relief on this aspect of petitioner's ineffective assistance of counsel claim for the following reasons:

> On the first day of trial, Freemon's lawyer asked the trial court for an adjournment because Freemon had just brought two potential witnesses to his attention. Freemon informed his lawyer that his nurse and his hand surgeon could testify that the condition of his injured hand rendered him incapable of firing a gun. Freemon asserted that their testimony would impeach the testimony of Robuste and Newman. The trial court denied the request for an adjournment, but indicated that Freemon's lawyer could present the nurse and the surgeon as witnesses. While the surgeon did not testify, the nurse testified that Freemon had sutures on his right hand, was receiving IV antibiotics for his injury, and might have had some difficulty opening and closing his right index finger. Thus, the record demonstrates that Freemon's lawyer was aware of the witnesses and the general scope of their testimony. Accordingly, this is not an instance in which a lawyer failed to investigate the possibility of a potentially exculpatory witness that deprived the defendant of a substantial defense. Instead, the decision to present the nurse as a witness, rather than the surgeon, was the result of professional judgment. While Freemon's lawyer arguably could have presented the surgeon to buttress the testimony that indicated Freemon's hand was incapable of shooting a gun, the failure to do so did not render his performance below an objective standard of reasonableness. And given that the hand surgeon's testimony would, presumably, be cumulative to Freemon's and the nurse's testimony, Freemon cannot establish that the failure to call the surgeon as a witness was prejudicial, i.e., outcome determinative.

*Freemon*, 2017 WL 3495377, at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v Smith*, 395 F.3d

251, 258 (6th Cir. 2005). However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective." *Strickland*, 466 U.S. at 481. "[W]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial." *Id.* Moreover, "[d]ecisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

In this case, counsel was aware of the injured-hand defense, investigated it, and called the nurse to testify at trial. Although, as petitioner argues, counsel could have provided additional records or testimony at trial, counsel's performance was neither unreasonable nor deficient. Further, particularly in light of the cumulative evidence presented at trial and the fact that the nurse testified concerning petitioner's hand injury, petitioner has failed to show that he was prejudiced or deprived of a substantial defense as a result of counsel's performance. This argument therefore fails to establish trial counsel's ineffectiveness.

Petitioner next asserts that trial counsel was ineffective because counsel could not sufficiently hear all of the trial proceedings. The Michigan Court of Appeals denied relief on this claim, stating:

> During trial, Freemon's lawyer indicated that he had trouble hearing

7

> on at least one occasion. However, there is nothing in the record to suggest that Freemon's lawyer missed any part of the proceedings due to a hearing problem. In fact, the record indicates that Freemon's lawyer fully participated in the trial and cross-examined each witness extensively in a manner that indicates he heard the full direct examination. Moreover, Freemon does not argue that his lawyer's alleged hearing difficulty made the result of the proceeding any different than it would have been otherwise. Thus, Freemon has not demonstrated that he received ineffective assistance from his lawyer based on his lawyer's alleged inability to hear the proceedings.

*Freemon*, 2017 WL 3495377, at *5.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. While counsel apparently had difficulty hearing on one occasion during the trial, he brought it to the court's attention. There is no indication that counsel had trouble hearing during other portions of the trial or that he was unable to effectively participate in the proceedings. Petitioner has also failed to provide any support for this claim. Conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). This argument therefore fails to establish trial counsel's ineffectiveness.

Petitioner next asserts that counsel was ineffective for failing to move for a directed verdict on the AWIM charge. The Michigan Court of Appeals denied relief on this claim, stating:

> A motion for a directed verdict is reviewed in the same manner as a challenge to the sufficiency of the evidence. *People v. Schultz*, 246 Mich. App. 695, 702; 635 N.W.2d 491 (2001). As discussed above, the evidence presented at trial was sufficient to support Freemon's conviction of assault with intent to commit murder. Accordingly, Freemon's lawyer was not ineffective for failing to move for a directed verdict.

*Freemon*, 2017 WL 3495377, at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law. The Michigan Court of Appeals determined that the prosecution presented sufficient evidence to support petitioner's AWIM conviction. Petitioner therefore cannot establish that counsel erred or that he was prejudiced by counsel's conduct. Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020). Petitioner has thus again failed to establish trial counsel's ineffectiveness.

Petitioner next asserts that trial counsel was ineffective for making arguments inconsistent with petitioner's own testimony. Specifically, during closing argument, counsel indicated some skepticism regarding Freemon's explanation of the shooting. In denying this claim, the Michigan Court of Appeals stated:

> Based on our review, we conclude that faced with contradictory testimony, Freemon's lawyer apparently made the strategic decision to acknowledge the improbability of Freemon's version of events. Freemon had testified that the gun went off accidently when Robuste "smacked the cell phone and the gun" in his hands when he was trying to show her a video, that he closed his eyes in reaction to the gun going off, that he felt something on his hands so let go of the gun, and that he heard two more gunshots. In allowing that this account was not very plausible, Freemon's lawyer could have reasonably believed that this decision would strengthen Freemon's credibility, and thus his ability to argue to the jury that the prosecution had not proved Freemon's guilt beyond a reasonable doubt. It also provided leeway for Freemon's lawyer to argue that there was another explanation. If both Freemon and Robuste had lied about how the shooting occurred, then the resolution of the case arguably rested on the issue of what the physical evidence suggested occurred. The fact that Freemon's lawyer's strategy did not work does not mean that he provided ineffective assistance. *See People v. Stewart* (On Remand), 219 Mich. App. 38, 42; 555 N.W.2d 715 (1996).
>
> Further, Freemon has not demonstrated the requisite prejudice necessary to establish his claim that his lawyer provided ineffective assistance. At trial, the prosecutor offered the testimony of Robuste to establish that Freemon drew a gun on her, said "he should shoot her right now," put the gun in her mouth, grabbed the collar of her shirt,

> forced her into the kitchen, physically restrained her when she attempted to leave the house, and shot her three times in the leg, chest, and face. Both Newman's testimony and the physical evidence corroborated Robuste's version of events and even Freemon initially admitted to the police that he caused Robuste's injuries. In addition, the prosecutor presented evidence that Freemon committed prior acts of domestic violence against Robuste and had fled the scene after the shooting. Thus, in light of this overwhelming evidence of defendant's guilt, there is no reasonable probability that, but for Freemon's lawyer's closing argument, the result of the trial would have been different.

*Freemon*, 2017 WL 3495377, at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. Counsel made a strategic decision to argue that neither the victim's nor petitioner's version of events was particularly believable based upon the physical evidence. Such a strategy was reasonable under the circumstances. "The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective." *Knapp v. White*, 296 F. Supp. 766, 783-84 (E.D. Mich. 2003). Further, given the significant evidence of guilt that was presented at trial, petitioner cannot establish that he was prejudiced by counsel's strategic decisions during closing argument. Petitioner has therefore failed to show that trial counsel was ineffective.

Finally, petitioner asserts that counsel was ineffective for failing to obtain an expert witness on bullet trajectory. He contends that such an expert would have been able to counter the victim's version of events and testify that petitioner could not have fired the gun. The Michigan Court of Appeals denied relief on this claim, stating in relevant part:

> Here, there is no indication that Freemon's lawyer failed to consult with an expert or made his decision not to retain such an expert before deciding on a trial strategy. Freemon has not provided any evidence that an expert in bullet trajectory would have supported his theory. Thus, Freemon has merely speculated that a bullet trajectory expert would have provided favorable testimony to his defense, so he has failed to show that the retention of a bullet trajectory expert would

have altered the outcome of his trial.

*Freemon*, 2017 WL 3495377, at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. While petitioner alleges that an expert witness would have provided favorable defense testimony, he offers no evidence in support of this claim. As indicated above, conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. *See Workman*, 178 F.3d at 771. For these reasons, the Court shall deny petitioner's claims of ineffective assistance of counsel contained in Counts I and IV.

### B. *Jury Instructions (Claim II)*

Petitioner next asserts that he is entitled to habeas relief because the trial court failed to instruct the jury on mitigating circumstances and on the defense of accident. "To warrant habeas relief, jury instructions must not only be erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). Further, "[i]t is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks omitted). State law instructional errors rarely form the basis for federal habeas relief. *See id*. at 71-72.

The Michigan Court of Appeals denied relief on this claim, stating:

> "[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v. McKinney*, 258 Mich. App. 157, 162-163; 670 N.W.2d 254 (2003). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *People v. Riddle*, 467 Mich. 116, 124; 649 N.W.2d 30 (2002).

\*\*\*

11

> Freemon requested the mitigating circumstance jury instruction, which instructs the jury that "[i]f the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder." CJI2d 17.4. Manslaughter requires proof of such provocation that a reasonable person would lose control and proof that there was insufficient time for a reasonable person to regain that control. *People v. Hawthorne*, 265 Mich. App. 47, 58; 692 N.W.2d 879 (2005), *rev'd on other grounds* 474 Mich. 174 (2006). At trial, the prosecution alluded to discord in Robuste's and Freemon's relationship and presented testimony regarding the allegations of Robuste's infidelity and prior instances of domestic violence. However, there was no evidence that Freemon assaulted Robuste in the heat of passion. Instead, Freemon denied shooting Robuste intentionally and asserted that he only fired one shot by accident. Consequently, the requested instruction was not supported by the testimony, and the trial court did not err in refusing to give it.
>
> With regard to the accident instruction, Freemon's lawyer never requested it. Moreover, he expressed satisfaction with the jury instructions as they were given, so Freemon's argument related to the accident instruction is waived. *See People v. Carter*, 462 Mich. 206, 215; 612 N.W.2d 144 (2000). In addition, despite the fact that the accident instruction was not read, the jury could have still concluded that, based on Freemon's testimony, he did not intend to murder Robuste and so was not guilty of assault with intent to commit murder. Therefore, even if an accident instruction could or should have been given, the issues to be tried were fairly presented to the jury by the instructions that were actually given, thereby protecting Freemon's rights. *See Knapp*, 244 Mich. App. at 376.

*Freemon*, 2017 WL 3495377, at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. First, to the extent that petitioner asserts that the jury instructions, as delivered at his trial, erred under Michigan law, he merely alleges a violation of state law. This does not justify federal habeas relief. *See Estelle*, 502 U.S. at 71-72. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id*. at 67-68.

Second, petitioner has failed to establish that the trial court's refusal to give a mitigating circumstances instruction rendered his trial fundamentally unfair. As explained by the Michigan Court of Appeals, the evidence at trial did not support such an instruction. There was no evidence that petitioner acted in the heat of passion or in self-defense. Rather, petitioner claimed that he fired the gun only once and that the shooting was accidental. He has thus failed to show that a mitigating circumstances instruction was warranted or that the trial court's refusal to give the instruction denied him a fundamentally fair trial.

Third, petitioner has waived his claim concerning the accident defense instruction. Waiver is an "intentional relinquishment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). It is "a recognized, independent and adequate state law ground for refusing to review alleged trial errors." *Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012). Here, trial counsel indicated that he was satisfied with the instructions as given, thereby waiving review of this issue. Regardless, petitioner is not entitled to relief on this claim. As explained by the Michigan Court of Appeals, even without the accident defense instruction, the jury still could have found that the shooting was accidental based on petitioner's testimony at trial. Petitioner has thus failed to demonstrate that the jury instructions, as given, rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### C.   *Speedy Trial (Claim III)*

Petitioner next asserts that he is entitled to habeas relief because his speedy trial rights were violated. The Sixth Amendment provides a criminal defendant with the constitutional right to a speedy trial. To determine whether a speedy trial violation has occurred, a reviewing court must consider the following four factors: "Length of delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The

Supreme Court has explained that

> none of the four factors . . . [i]s either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Id*. at 533. That being said, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. at 530. Therefore, "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (internal quotation marks omitted). Courts have generally found post-accusation delays of one year or more to be "presumptively prejudicial." *Id*. at 652 n.1. Under Michigan law, however, prejudice is generally presumed "[w]hen the delay is more than 18 months." *People v. Rivera*, 835 N.W.3d 564, 467 (Mich. Ct. App. 2013). "When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *Id*. at 468.

> The Michigan Court of Appeals denied relief on this claim, explaining in relevant part:
>
> In this case, Freemon was arrested on February 24, 2015, and his trial began on January 11, 2016, resulting in a delay of approximately 11 months. Because the time was less than 18 months, prejudice cannot be presumed. *Rivera*, 301 Mich. App. at 193. Accordingly, Freemon is required to prove prejudice by the delay. *Id*. A defendant can experience prejudice from delay in two ways: "prejudice to his person and prejudice to the defense." *Williams*, 475 Mich. at 264 (citation and quotation marks omitted). Prejudice to a defendant's person "would take the form of oppressive pretrial incarceration leading to anxiety and concern." *People v. Collins*, 388 Mich. 680, 694; 202 N.W.2d 769 (1972). Prejudice to the defense, "might include key witnesses being unavailable." *Id*. "In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense." *People v. Simpson*, 207

> Mich. App. 560, 564; 526 N.W.2d 33 (1994). Here, Freemon concedes that his defense was not prejudiced. Moreover, although Freemon contends that he suffered prejudice to his person in the form of anxiety, we note that the majority of the delay is attributed to the withdrawal of his first trial lawyer due to a breakdown in the attorney-client relationship. Under these circumstances, Freemon has not established that the 11-month delay deprived him of his constitutional right to a speedy trial.

*Freemon*, 2017 WL 3495377, at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. In this case, petitioner's trial began approximately eleven months after his arrest. Under neither Michigan nor federal precedent is this length of delay considered presumptively prejudicial. Because there was no presumptively prejudicial delay, it is unnecessary for this Court to inquire into the other *Barker* factors. *See United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). Petitioner has thus failed to establish a violation of his Sixth Amendment right to a speedy trial. Further, the Court agrees with the Michigan Court of Appeals' conclusion that petitioner failed to demonstrate that he was prejudiced by the delay. For these reasons, habeas relief is not warranted on this claim.

### D. Sufficiency of the Evidence (Claim IV)

Finally, petitioner asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his AWIM conviction. He also argues that this verdict was against the great weight of the evidence.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

15

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Under AEDPA, challenges to the sufficiency of the evidence must therefore "survive two layers of deference to groups who might view facts differently" than the reviewing court – the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). If either of those determinations was reasonable, habeas relief is not warranted.

Additionally, "it is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004). *See also Andrews v. Harry*, No. 17-13420, 2019 WL 698139, at *5 (E.D. Mich. Feb. 20, 2019) (applying the same standard on habeas review).

"In Michigan, the crime of assault with intent to commit murder requires proof of three elements: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citing Michigan law, internal quotation marks omitted). The Michigan Supreme Court has explained that intent to kill may be demonstrated by

> the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.

*People v. Taylor*, 375 N.W.2d 1, 8 (Mich. 1985). For example, the use of a lethal weapon supports an inference of an intent to kill. *See People v. Dumas*, 563 N.W.2d 31, 36-37 (Mich. Ct. App. 1997).

16

As with any crime, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *See People v. Kern*, 149 N.W.2d 216, 218 (Mich. Ct. App. 1967). Direct or circumstantial evidence and reasonable inferences arising therefrom may constitute satisfactory proof of the elements of an offense. *See People v. Jolly*, 502 N.W.2d 177, 180 (Mich. 1993).

> The Michigan Court of Appeals denied relief on this claim, stating:
>
> In this case, there was overwhelming evidence that Freemon intended to kill Robuste. Newman, who was at the house to change the locks, testified that Freemon put a gun to his head, commented that "If it wasn't [Newman], he would shoot him," and then asked where Robuste was. Upon learning that Robuste was inside, Freemon entered the home. Robuste testified that Freemon entered her bedroom, pointed a gun at her, and said that he "should shoot her right now." She recounted that he put the gun in her mouth, grabbed the collar of her shirt, and forced her into the kitchen. In the kitchen, he shoved her into a chair and "just started shooting." He shot Robuste in the leg, chest, and face. He then fled the scene, hiding the gun before he was apprehended by the police. In challenging the sufficiency of the evidence, Freemon essentially asserts that the jury should have believed his version of events and found Newman's and Robuste's testimony less credible. However, the weight and credibility of evidence, and the inferences to be drawn from the evidence, are matters for the jury to resolve. *People v. Unger*, 278 Mich. App. 210, 228-229; 749 N.W.2d 272 (2008). The prosecution therefore presented sufficient evidence to support Freemon's conviction for assault with intent to murder.

*Freemon*, 2017 WL 3495377, at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. The prosecution presented sufficient evidence that petitioner assaulted the victim with an actual intent to kill. The victim testified that petitioner entered her bedroom, pointed a gun at her head, said that he "should shoot her right now," then put the gun in her mouth, dragged her into the kitchen, and fired multiple shots, striking her three times, before fleeing

17

the scene. The Sixth Circuit "has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (compiling cases). Under the circumstances, it was reasonable for the jury to conclude that petitioner acted with the requisite intent to support his AWIM conviction.

Petitioner also challenges the trial court's evaluation of the testimony and evidence presented at trial. However, it is the responsibility of the factfinder at trial, not a federal habeas court, to resolve such evidentiary conflicts. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The jury's verdict and the Michigan Court of Appeals' decision affirming that verdict were reasonable given the evidence presented at trial.

Further, petitioner is not entitled to habeas relief on this claim insofar as it asserts a violation of state law. *See Estelle*, 502 U.S. at 67-68. The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson*. Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue that is not cognizable on habeas review. For these reasons, habeas relief is not warranted on this claim.

**IV.     Conclusion**

Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because no appeal in this case could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

Dated: May 9, 2022
       Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2022.

Perry Freemon  #888929
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN
MUSKEGON, MI 49442

s/Johnetta M. Curry-Williams
Case Manager